Good morning and may it please the court. My name is Vishwanath Kothalamohan and I'm the pro bono appointed counsel for the appellant Richard Gebhardt who is present here today with his family. I would like to reserve two minutes for rebuttal. The court's reversed for two reasons, your honors. The court has jurisdiction to review whether the AWA applies to Mr. Gebhardt's petitions and hold that it doesn't. Second, even if the AWA applies to Mr. Gebhardt's petition, the court still has jurisdiction to review the underlying constitutional claims and hold that respondents' procedures applied to adjudicated petitions violated his procedural due process. I want to ask you about that second issue because I had a hard time determining what procedural issues there were as distinct from substantive issues. I know that you disagree with the ultimate finding that there was no demonstration of no risk, but I wasn't certain what additional procedure you thought was missing and how it could have made a difference. Your Honor, we disagree with the final conclusion insofar as the procedures that were applied in adjudicating his petitions didn't comply with the APA. What specific procedure was deficient, exactly what way, and how did it make a difference? Your Honor, the first issue that existed in this case was the creation of the beyond a reasonable doubt standard without notice and comment. Now, beyond a reasonable doubt standard, your Honor, has never been applied in an immigration case before. In fact, there is no justification in the language of the statute that somehow justifies this presumption that beyond a reasonable doubt standard exists for the AWA cases. Okay. What why should there have been notice and comment? Because if the – I mean, it sort of folds into itself, because it seems to me that if there is unfettered discretion, then there's no requirement for notice and comment. So why is there a requirement for notice and comment? Your Honor, the unfettered discretion applies to the final determination of no risk, whether a petitioner poses a risk or not. Here, there's a reason for notice and comment, because the agency still has to comply with the Constitution and provide a full and of proof, which is a beyond a reasonable doubt standard, that has never been applied without any justification from Congress, which applies as a substantive binding norm across all cases. It's not an individualized issue, Your Honor. Other circuit courts that have looked at this have found that it is an equivalent – to ask a court to do what you are asking is equivalent to asking the court to review the discretion of the Secretary in determining the standard that will be applied to individual cases, and that is equivalent to examining the discretion exercise. How do you respond to that? Yes, Your Honor. Some courts – I'm sorry, Your Honor. Some courts have held that. However, those courts have looked at it from – not from a perspective of violation of the constitutional right. In this case, by not complying, the Ninth Circuit has repeatedly held that it has jurisdiction to review constitutional violations, even in case of discretionary decisions. Irrespective of whether the determination was discretionary or not, the procedure still has to comply with the Constitution. Well, but it seems to me that all of your claims challenge the Secretary's use of his sole and unreviewable discretion. So, since they all challenge that, then I guess I'm having a tough time understanding why it is somebody needs to send it for comment. Your Honor – I mean, the very – the very words, sole and unreviewable discretion, would even lead one to believe that this is a little bit different statute than we've got in other decisions where our circuit has suggested we could review the constitutional claims. This is a different statute with different language. And now you're trying to say that with that language, nonetheless, one has to send it for comment? Your Honor, they still have to send it for comment, because the sole and unreviewable discretion, again, as the Court has held, the Supreme Court has held in McNary, only applies to the final determination. The procedure – So if we were to say, for example, that it had to be a lower standard, it had to be a higher standard, why isn't that an interference with the discretion of the Secretary to say, no, that's not a high enough bar, I don't want to do that? Your Honor, they have – they have the right to create a new standard of proof, even when the Congress doesn't say that. But that's the whole argument, is that when they do that, they have to undergo notice and comment, because they're creating a substantive binding rule that applies in all cases. And this is not an agency interpretation that can apply in individualized cases. They're creating a rule that applies for every single AWA petition. But it is a rule that adopts a standard that is itself part of the Secretary's discretion to determine in the first place. So how do you get out of that circularity? Your Honor, we are arguing that the Secretary only has discretion for the final determination, not the procedure that they apply to come to that final determination and also – I'm sorry. Go ahead. Oh, sorry. And also, the procedure still has to comply with the Constitution, Your Honor, even in case of a discretionary – the discretion as the Court has held in Montero. Is the standard the substance of the procedure that you are challenging? The challenge is of the procedure that's being applied. Selecting the standard. Selecting the standard, Your Honor, yes. Your Honor, I would briefly like to also address that the AWA does not apply to Mr. Gephardt's petition because I'm seeing my time run out. Your Honor, the AWA doesn't apply to Mr. Gephardt's petitions because the language of the statute here at issue is clear and unambiguous, Your Honor. 8 U.S.C. Section 1154a1a1 or Clause 1 clearly states that it applies to who may file visa petitions. It's a prospective statute, Your Honor. It applies to a future class of people. The enactment of the AWA in no way changed the prospective nature of Clause 1. In fact, those two have to be read together, one part of – because they're part of the same statutory framework, but also because Clause 8 expressly links itself to Clause 1 and says that Clause 1 shall not apply for certain citizens. Clause 1 only applies to a future class of citizens, Your Honor, and in this case, Mr. Gephardt had filed the visa petitions before the AWA was enacted. In fact, this is a little different to all the cases we've heard. They hadn't been adjudicated yet, though, so there was no vested right that he had acquired, correct? Your Honor, he actually – the petitions were actually approved a day after the AWA was enacted. Then they went back and applied the AWA, and in this case, Your Honor, Mr. Gephardt But, just a minute. If you just listen to what Judge Graber is asking you, I think it would be interesting for you to respond. The honest application of facts to dates here suggests that your application was filed before the amendment. There were – and then the amendment happened, and then the application was approved. What you're suggesting is that the mere filing is enough to suggest that the amendment did not apply. But the amendment had nothing to do with filing. The amendment had to do with how the Secretary would determine the petition once filed. There was no filing. We wouldn't even have a case. So the very fact that it was filed had really nothing to do with what the amendment had applicable to it. Your Honor, can I – I'm sorry. Please go ahead, Your Honor. It did. I mean, really, it had no application. You could have filed it any time you want, and the amendment had no application to that. The amendment was simply how the Secretary would determine that. So every application not already determined seemed applicable to apply the amendment. Your Honor, can I answer the question? Yeah, sure. I wouldn't ask the question if you couldn't answer it. Right, Your Honor. Your Honor, this case is a little different to – Maybe. Maybe you can't answer it anyway. But nonetheless, I'd ask it. Your Honor, this case is a little different to all the other cases that were cited in the appellant's briefs and the respondent's briefs insofar as the question at issue here is Mr. Gephardt's case is a little different because it's a presumption the statute – the statutes apply prospectively. They don't have retroactive application unless expressly said so. In this case, Your Honor, insofar as there is any ambiguity or tension between the is-filed language of Clause 8, where the AWA was codified, and the may-file language of Clause 1, Your Honor, that ambiguity is easily resolved in that the AWA applies to the petitions that were filed after the AWA was enacted. Mr. Gephardt's petitions were filed before the AWA was enacted, Your Honor. Who suggests that that's what it is? In my book, reading what's said and what's said in the amendment, the amendment would not apply to anything that they'd already determined prior to amendment, but any petition not already having been determined, it seems that the AWA could apply to that very easily, and it wouldn't be retroactive at all. Your Honor, Clause 1 expressly states, who may file. May file being the operative phrase. You may file. You can file. If you don't file, we don't have an application. True, Your Honor, but the may-file language only applies to a future people, not people who have already filed. Had Congress wanted to say that, the language of the statute would be a little different in that it would have said that it applies to all petitions that have all, you know, ever been filed. In this case, the fact that they specifically engrafted Clause 8 into Clause 1, which is a future-oriented statute, it governs the regulations for a future class of citizens who have not filed the applications yet. They may file in the future. That's what this Clause 1 states. And the passage of the AWA thereafter engrafted itself to Clause 1 and said that, okay, fine, but now we have this no-risk assessment that we need to make based on these petitions that have been filed, but that file language cannot be read separately from Clause 1 because they're part of the same statutory framework, Your Honor. And the Clause 1 that's – the Clause 1 that it engrafts to is clearly a prospective statute. It doesn't apply to already-filed petitions. Thank you, counsel. You've exceeded your time, but we asked a lot of questions, so you may have a minute for rebuttal when the time comes. Thank you, Your Honor. We'll hear from the government. Thank you, Your Honors. Josh Press from the Department of Justice here on behalf of the government defendants. Your Honors, we believe that the Adam Walsh Act was specifically designed for these types of situations. We understand the timing arguments that my opposing counsel just laid out. Could you either speak up or move the microphone? I apologize. I'll try to speak a little closer to the microphone. We understand the timing arguments that my opposing counsel laid out and the frustration in the sense that the enactment occurred one day before the adjudication of Mr. Walsh's petition, which, by the way, is not the petition that's up on appeal here. The law was the law, and that gave — I'm sorry. Do you agree that the issue of whether the AWA applies to petitions before the date of enactment, filed before the date of enactment or the day after the day of enactment, that that is a predicate legal question over which we would have jurisdiction? No. I understand Your Honor's reference. How is it different from the decision of whether there is a conviction at all covered by the statute, which was the case in the, I think, the Sixth Circuit? Privet, I believe. Yes. So I understand what you're talking about with predicate legal question. Right. That is a unique doctrine to the Eighth Circuit. I think all circuits have rather unique jurisprudence sometimes. This circuit's no exception. I think Your Honor's will acknowledge that. But with the Eighth Circuit and the predicate legal question doctrine, what they're really going at are things like what was the law at the time, things of that nature. And that is why, for example, we do not contest that, for example, the qualifying crime inquiry — if a petitioner were here arguing I never actually committed the offense that they are saying I committed or I was never convicted of that offense or in actuality the offense itself was not one of child molestation or sex offense against a child, that would be a different inquiry. That would be the type of predicate legal question, for example, that the Eighth Circuit was trying to get at. And we have jurisdiction over the question of when a statute takes effect, which has nothing to do with discretion. Congress either intends it to take effect at a certain time or it intends it to take effect at another time, and it's absolutely not in the Secretary's discretion to decide that. I agree. I'm not sure that it would fall under the predicate legal question just because of the unique nature of that doctrine. Sotomayor, so regardless of the label, do we have jurisdiction to consider that legal issue of the timing of the effective date and what it means? Absolutely. When the law became the law, I think you absolutely would have jurisdiction. And that actually goes to a lot of the ex post facto arguments that have been advanced surrounding the Adam Walsh Act. I understand that that's not – I don't think that that's currently being argued by my opposing counsel, but that ensures that there is no ex post facto problem and reduces the potential for a retroactive application that might put somebody in a Kafkaesque situation. So some of these same precedents have approached the constitutional challenges to the statute by saying, look, we don't know that we have jurisdiction, but assuming without deciding that we do have some jurisdiction to review the constitutional challenge, we don't find that there's merit to the constitutional challenge. What's the government's position on that approach? Well, we agree with the analyses applied by the Eighth Circuit. I think that's what's happening. And assuming without deciding even if? And the panel, the Court is obviously well capable of doing that, and we wouldn't have a tremendous problem with that just because these challenges are multiplying all over the country. And it doesn't really matter whether we keep saying sole and unreviewable discretion means sole and unreviewable discretion. We are going to keep getting the same challenges, and to the extent that this Court wants to provide guidance on the other issues, if it were to take the same tactic adopted by the Eighth Circuit, that wouldn't be a tremendous problem for us. We think that, however, it would be at least important to acknowledge that the Court doesn't actually have jurisdiction to decide or to second-guess the Secretary's determination. Well, second-guessing is one thing, and the Constitution is another. And I wonder if you would be taking the position that we lack jurisdiction over even constitutional challenges if the Secretary announced that this statute would not be applied to women. It would be applied only to men, and even though there are a few women who've committed these child crimes, we, you know, we're just, we don't believe in doing that, we're not going to do that. And, you know, is that the sort of constitutional challenge, it's just an example, that we would have the power to hear? I think the Supreme Court's case law on that point is that where actions by the that effectively the way out of that scenario would be to say the discretion here was not actually discretion given to the Secretary in the statute. So the statute speaks in terms of a sole and irrevocable discretion, but sole and irrevocable discretion to decide what. And if he were to say, you know, when the sky is blue, that I don't think anyone could actually meet this no-risk determination, something completely arbitrary, insane, I think that what the panel could say in that point to get around this problem, because it's a thorny issue and we understand it, is to say those are essentially void ab initio. They're not actually discretionary determinations. Because they're so clearly unconstitutional? No, and so clearly not decided based on any relevant factor whatsoever. But, but really it seems to me that if that's your argument, then you're really saying we have the ultimate authority to determine a constitutional claim as long as it reaches a certain level, but as long as it doesn't reach that level, we have no authority. I don't Perhaps colorable is one way to describe it. It has to be non-frivolous. Nothing like that, obviously, nothing like that is presented in this case. Nothing like that has essentially been, I think, advanced in any litigation, because the Ites and Neufeld memoranda are very clearly designed to look at relevant criteria and apply them in a straightforward way. But I don't want to say that something that is very clearly ultra vires beyond the pale of the Secretary's discretionary authority would be absolutely immune from judicial consideration. If we adopted that idea, would that agree with the Eighth and the Sixth Circuits? Well, the Sixth Circuit's determination was that normal constitutional argumentation is inherently bound up in the discretionary determination. I agree. And I think what Judge Boggs was trying to get at in that decision was that effectively, if you're going to make the argument about procedural due process, if you're going to make the argument about the fundamental right to marry, those are all considerations of the adjudicator applying his or her oath to uphold the laws and constitution of the United States, applying the presumption of regularity. They will make those assessments when they're talking about the relationship between the petitioner and the intended beneficiaries. In this case, it was a wife and her three teenage children. At the time, they were teenagers. When you're dealing with somebody who was convicted of a crime of a minor under, I think it was 14 years old, that sort of determination is much more fact-bound than I don't believe that women could ever do this type of thing, so I'm only going to apply it to men, invidious discrimination claims. One more question, if I might. Sure. One way of looking at the arguments, as I understood it from the appellant, is that in essence, the Secretary has taken such a harsh standard that it's no discretion. The Secretary is saying we're just not going to grant any of these in effect. And if I'm misstating the argument, I apologize. But reading the record of the various interpretive guidance that are — that the Secretary provides, if that's the argument, would that permit us to have jurisdiction to review an exercise of discretion that essentially says we don't have discretion in individual cases? No. Let me explain why. Yeah. It would not be because, to the extent that the Secretary wants to be generous to these petitioners, that is solely within her wheelhouse, as it were. That is solely up to her. If — I want to also just, if I might, point out that if you were to strike down, let's say, the memoranda at issue and say they weren't issued without notice and comment, therefore they violated the APA, what you'd be left with is the statutory language. Statutory language is much more draconian with the beyond reasonable doubt standard that the memoranda asks for adjudicators to apply. No risk is none — is beyond a shadow of a doubt. Beyond a reasonable doubt, it still might leave some doubt, but you really would say, I don't think that would ever come up. I just truly don't believe that would happen. Beyond a shadow of a doubt, it would be much more akin to no risk. That would be much more draconian. And I also want to point out, you know, these petitions do get granted sometimes. I've gone back to my client on this and asked specifically for the number. Is that in the record? No, that's not on the record, because that's not really something that would be in the inherent record for the agency to say, by the way, we want to reassure you that sometimes we do grant these things. But that is something that has happened, that's been presented in multiple cases across the country. And it is possible to meet the standard, although it is very high, and that's exactly what Congress intended when it enacted the Adam Walsh Act. Thank you, counsel. We appreciate your arguments. And you have a minute for rebuttal, Mr. Rohan. Two quick points, Your Honor. First, the AWS no risk assessment only applies to future petitions, because it specifically engraves onto statutory language that says who may file, not who has filed and may file, just the may file language. Turning to the argument that the Respondent's counsel made, Your Honor, no risk does not automatically justify the presumption that beyond a reasonable doubt standard applies. No risk is a factual inquiry, Your Honor. Just because in a battery proceeding someone has to prove no consensual touching, the use of the word no does not automatically mean that now there's a heightened standard of proof. In fact, the only presumption that makes sense given the statutory language is that the legal standard that is applied in immigration questions is preponderance of evidence, which is why it didn't state that now you have to adjudicate AWA petitions under the beyond a reasonable doubt standard. This is a specific legal yardstick, Your Honor, that the government is using to adjudicate all AWA petitions. They can't tomorrow come and say, oh, we're going to use Russian law, and that'll be OK. How can they – these yardsticks need to go through notice and comment, because these are not factual, specific inquiry. Thank you, Your Honor. Thank you, Counsel. The case just argued is submitted. We appreciate very much the helpful arguments from both counsel, and we especially thank you for taking on a pro bono case. It's extremely helpful to the Court. We appreciate it.
judges: Graber, N.R. Smith, Rosenthal